IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex ) <br> rel KATHY FENDER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TENET HEALTHCARE ) <br> CORPORATION; TENET HEALTH ) <br> SYSTEMS MEDICAL, INC.; ) <br> BROOKWOOD HEALTH SERVICES, ) <br> INC.; BROOKWOOD HEALTH ) <br> SERVICES, INC. d/b/a BROOKWOOD ) <br> MEDICAL CENTER and ALABAMA ) <br> MEDICAL GROUP, INC., ) <br> ) <br> Defendants. | CIVIL ACTION NO. 98-G-0899-S |

MEMORANDUM OPINION

The case presently before the court falls within the parameters of the False Claims Act [hereinafter FCA], 31 U.S.C. § 3729 *et seq.*, designed by Congress to "... encourage private citizens to help the executive branch deter and redress violations of federal law." Evan Carminker, The Constitutionality of Qui Tam Actions, 99 Yale L.J. 341, 344 (1989). Under the FCA, any person who

knowingly submits a false claim to the government is liable to the United States [hereinafter the Government][1] for a civil penalty and damages. The Act provides that the Attorney General and Department of Justice may enforce the Act on behalf of the United States in qui tam actions,[2] § 3730(b)(1), and also allows enforcement by private individuals (called relators). If the United States declines to prosecute the case, then the relators may proceed with the action exclusively.

31 U.S.C. § 3730(b)(1) specifically provides the following:

> A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action may be dismissed only if the court and the Attorney General have given written consent to the dismissal and their reasons for consenting.

Other pertinent provisions are summarized in *U.S. ex rel Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life and Acc. Ins. Co.*, 811 F. Supp. 346, 346 (E.D. Tenn 1992), below:

> Section 3730(b)(4)(B) provides that if the United States notifies the Court that it declines to take over the prosecution of the qui tam plaintiff's complaint, then the person bringing the action shall have

---

[1] Some quoted material in this opinion adheres to the text and uses lower case for government. This is not to be construed as inconsistencies.

[2] The term "qui tam" is short for "qui tam pro domino rege quam pro se ipso in hac parte sequitur," which means "who pursues this action on our Lord the King's behalf as well as his own." The phrase dates from at least the time of Blackstone. *See* 3 W. Blackstone, Commentaries 160.

the right to conduct the action. Furthermore, § 3730(c)(3) provides in part: "if the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action." In regard to settlement § 3730(d)(2) provides in part: "If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages."

Other than its ruling in *U.S. v. NEC Corp.*, 11 F.3d 136 (11th Cir. 1994),[3] that qui tam provisions of the FCA are remedial and survive the death of the plaintiff, the Eleventh Circuit has not spoken to specific FCA issues dealt with in this opinion. While differing interpretations have been placed on the FCA by the courts of this land, no decision is binding upon this court. The court, therefore, addresses the issues as those of first impressions.[4]

---

[3] *See, U.S. ex rel. Haskins v. Omega Institute, Inc.*, 11 F. Supp. 2d 555, 559 (D.N.J. 1998), *decision clarified on reconsideration*, 25 F. Supp. 2d 510 (1998), in which the court referring to the position taken by the Third Circuit in *United States ex rel Dunleavy v. County of Delaware*, 123 F.3d 734, 739 (3rd Cir. 1997), said the following: "[T]he court agreed with the Eleventh Circuit's conclusion that the FCA's purpose is not limited to punishing the wrongs against the public; the FCA also fills a remedial capacity in redressing injury to the individual relator."

[4] On May 22, 2000, the Supreme Court held that a private individual has standing to bring suit in federal court on behalf of the United States under the FCA, but that the FCA does not subject a state (or state agency) to liability in such actions. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 120 S. Ct. 1858, 2000 WL 646252 (U.S. Vt.). The court did not address other
(continued...)

In the instant case the Government has been given ample opportunity to intervene, the court having extended the statutory deadline for intervention almost two years.[5] Pursuant to the December 3, 1999, order giving the Government until April 21, 2000, to make its intervention decision, the Government on that date notified the court that it was not intervening. Nevertheless, it requested that everything other than the complaint, notice of its intention not to intervene, and the court's order remain under seal.

This court is of the opinion that the Government's request is unreasonable and contrary to the legislative intent of the FCA. *See, United States ex rel McCoy v. California Medical Review, Inc.*, 715 F. Supp. 967, 968, n.1 (N.D. Cal. 1989) ("[T]he court should carefully scrutinize any additional Government requests for extensions by evaluating the Government's progress with its criminal inquiry. The Government should not, in any way, be allowed to

---

[4](...continued)
issues.

[5] By order of December 3, 1999, the court expressed its reluctance in granting a "final extension. This is absolutely the last extension that will be considered." The order noted that the "final extension" was the fourth extension granted, said extensions dating back to July 21, 1998. Other orders granting extensions were entered on the following dates: June 3, 1999; and December 17, 1998.

unnecessarily delay lifting of the seal from the civil complaint or processing of the qui tam litigation." S.Rep. No. 99-345, 99th Cong., 2d Sess. 24, reprinted in 1986 U.S. Code Cong. & Admin. News 5266, 5290 [hereinafter Leg. Hist.]. *McCoy*, at 969, noted that "[k]eeping the qui tam complaint under seal for the initial 60-day time period is intended to allow the Government an adequate opportunity to fully evaluate the private enforcement suit . ... Leg. Hist. at 5289." The legislative history of section (b)(3) also indicates that "once the Government has elected whether to intervene under paragraph (2), unsealing of the complaint is virtually automatic." 715 F. Supp. at 969. Indeed, if the United States does intervene in a civil FCA case it may no longer petition the court for an extension of time to hold the case under seal, nor may it call a complete halt to the relators' discovery action. Nor can it in the instant case by refusing to intervene. The complaint states an injury to the United States. Unnecessary delay causes injury to the relator.

The court, in *U.S. by Dept. of Defense v. CACI Intern, Inc.*, 885 F. Supp. 80, 81 (S.D.N.Y. 1995), specifically noted that 31 U.S.C. § 3730(c)(3) "makes no mention of the government's right to keep in camera information under seal indefinitely." "[E]ven when the government intervenes it can not limit the status and rights of the qui tam relator, one of which is 'the right

5

to conduct the action.'" *Id.* The court finds no authority under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, or elsewhere to hold information relating to this cause under seal. The request to retain the action under seal, which this court has taken as a motion, is DENIED. The relator is ordered forthwith to serve the defendants with summons and copies of the complaint. All other contents of the court's file are to be unsealed, made public, and served upon the defendants. The Government can inflict no further injury on the relator by delaying tactics.

The court further holds that the United States cannot prevent the parties from settling the action. In *U.S. ex rel Stinson, Lyons, Gerlin & Bustamante. P.A. v. Provident Life and Acc. Inc. Co*, 811 F. Supp. 346 (E.D. Tenn. 1992), the qui tam plaintiff and defendant negotiated a settlement and submitted a final order dismissing the action. At issue was whether the parties could negotiate a settlement and agree to have the action dismissed without the consent of the Attorney General. *Stinson* importantly holds, at 347, that "once the United States declines to intervene, the qui tam plaintiff has the right to conduct the action and dismiss or settle the case **without the consent of the Attorney General** (emphasis added). The decision by the Attorney General not to intervene in and conduct the lawsuit is tantamount to consent by the Attorney General to have the action

dismissed. *Minotti v. Lensink*, 895 F.2d 100, 104 (2d Cir. 1990); *United States ex rel. Laughlin v. Eicher*, 56 F. Supp. 972, 973 (D.D.C. 1944)."

Equally as important is the 9th Circuit's holding in *U.S. ex rel Killingsworth v. Northrop Corporation*, 25 F.3d 715 (9th Cir. 1994), *appeal after remand, Trivedi v. U.S. Dept. of Defense*, 69 F.3d 545 (9th Cir. 1995), *cert. denied,* 517 U.S. 1110, 116 S. Ct. 1332, 134 L. Ed. 2d 483 (1996), *and cert. denied,* 519 U.S. 928, 117 S. Ct. 296, 136 L. Ed.2d 215 (1996), which held that the Government's right to intervention does not give it absolute right to bar proper settlement between parties where the Government has had notice of settlement and has declined to take any action. The Government cannot force contractor and former employee to continue litigation by refusing to consent to settlement. This court concurs with and adopts the *Killingsworth* holding: " [T]he government's consent to dismissal is only required during the initial sixty-day (or extended) period in which the Government may decide whether to intervene." 25 F.3d at 722. *See also, U.S. ex rel. Haskins v. Omega Institute, Inc.*, 11 F. Supp. 2d 555, 561-62 (D.N.J. 1998) ("Where the government declines to so intervene, it cannot compromise plaintiff's claim, even if it settles its own claim against a defendant.) The court holds that since the court has magnanimously extended the deadline for

the United States to elect to intervene on four separate occasions, dating back to July 21, 1998, and by order of December 3, 1999, (document 13 in the court file) gave notice to the United States that the extension granted was the final one, the United States has waived its right to intervene in this cause.

Parties have the right to contract settlement without interference. The Justice Department has no right to nullify a settlement agreement in a case in which it is not a party. Such Government intervention and interference is tantamount to armed intrusion into a person's home, showing no consideration of individual rights.

Since the United States has no right to interfere with the settlement or dismissal of the cause after the period for intervention has passed, has no right to have the case sealed indefinitely, and has no further right to intervene after the initial statutory time period during which it has declined to do so, the court holds that the Government is not entitled to receipt of pleadings, motions, memoranda, etc. in this cause, nor is it entitled to receipt of deposition transcripts. No one but a party is entitled to receipt of the enumerated items. It is the opinion of the court that the Government is not entitled to the receipt of the above information unless it becomes a party. As a non-party the Government has no right to control the

action. It is offensive to the court to be asked to serve papers on a non-party and to have to treat it as a party when it refuses to be a party. A non-party has no right to tell the court how to perform a judicial act. Only higher courts within the judiciary are granted that authority. To give the Attorney General the right to look over the shoulder of the court and tell it what it may and may not do is violative of the separation of powers and repugnant to this court. An employee of the Executive Branch of the government does not have the constitutional power to order copies of pleadings in the case. It has long been the province of the courts to encourage settlement of cases--a practice which this court has followed. To paraphrase Aretha Franklin's "A Rose Is Still A Rose,"[6] the "Government Non-Party" still wants to have all the rights and privileges of a party. It cannot have its cake and eat it, too.[7]

It has been suggested by some that the FCA's constitutionality is based on the correlation set out in *Morrison v. Olson*, 487 U.S. 654, 108 S. Ct.

---

[6] Ms. Franklin's reference is to Gertrude Stein's quotation from *Sacred Emily*: "Rose is a rose is a rose."

[7] Reference to George Herbert's quotation from *The Size*: "Wouldst thou both eat thy cake and have it?"

2597, 101 L. Ed. 2d 569 (1988),[8] in which the court upheld the independent counsel provisions of the Ethics in Government Act as being non-violative of the Constitution's appointments clause of article II,[9] or separation of powers principle.[10] For present purposes the court does not have to decide the issues of whether the relator has the authority to proceed with the instant cause or whether the action should be dismissed, the statute being violative of these two constitutional provisions and the constitutions's "Take Care Clause." [11] [12]

---

[8] Held that the power to enforce federal law may be granted to persons outside the Executive Branch as long as the Executive Branch retains a sufficient control over the litigation and thus ensures that the laws are faithfully executed.

[9] [The President] shall nominate, and by and with the Advise and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law. But the Congress may by Law vest the appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments. U.S. Const. art. II, § 2, cl. 2.

[10] U.S. Const. art II, § 2, cl. 2.

[11] U.S. Consti. art II, § 3: "[the Executive] shall take Care that the Laws be faithfully executed."

[12] The Supreme Court in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 120 S. Ct. 1858, 2000 WL 646252, n.8 on 1865, specifically said the following: "[W]e express no view on the question whether qui tam suits violate Article II, in particular the Appointments Clause of § 2 and the "take Care" Clause of § 3."

Ultimately, the court will have to address these issues and gives the parties the opportunity to brief within 90 days of appearance of counsel following service of the complaint whether this cause should be dismissed as being violative of provisions of the U.S. Const. art. II. A copy of this opinion is to be served with the other suit papers.

*Riley v. St. Luke's Episcopal Hosp.*, 196 F.3d 514 (5th Cir. 1999), *reh'g en banc granted,* 196 F.3 561 (5th Cir. 1999), discusses the "Take Care Clause" of the Constitution and its application to the FCA and distinguishes appointments of relators under FCA from *Morrison* upholding appointment of independent counsel. *Riley* held that the qui tam provisions of the FCA violate the Take Care Clause and the separation of powers doctrine because qui tam actions undermine the President's exercise of his constitutionally assigned duties. The doctrine of separation of powers prohibits one branch of Government from intruding on the constitutionally granted powers of another. "The doctrine may be violated when one branch of government aggrandizes itself at the expense of

another or when one branch 'impermissibly undermines' the constitutionally granted powers and functions of another, even if there is no aggrandizement." 196 F.3d at 522. *See Clinton v. Jones*, 520 U.S. 681, 701, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997), *judgment aff'd*, 520 U.S. 681, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) (stating that "the separation of powers doctrine requires that a branch not impair another in the performance of its constitutional duties") (cited 196 F.3d 522, n.28).

Important safeguards present in *Morrison*, 487 U.S. at 696, 101 L. Ed.2d at 609, that ensure the Attorney General's control of the independent counsel are lacking in the False Claims Act. FCA qui tam actions in which the Government does not intervene fail to provide the Attorney General with "'sufficient control over the [relator] to insure that the President is able to perform his constitutionally assigned dut[y]' to take care that the laws be faithfully executed." [13] *Riley*, 196 F.3d at 527. Qui tam actions are distinguished from

---

[13] The *Riley* holding addresses only those FCA qui tam actions in which the Government declines to participate. 196 F.3d at 528, n.39.

*Morrison* because they lack the provisions of the Ethics in Government Act which give the Executive control: 1) the Attorney General does not retain the power to remove the relator (as he does with independent counsel) which gives the Executive Branch ability to ensure that the laws are carried out; 2) the Attorney General does not request that relators be appointed if he finds no grounds for belief that action is warranted; 3) the jurisdiction of the relator is not defined with reference to the facts submitted by the Attorney General; and 4) the relator is not required to abide by Justice Department policy. Thus, in qui tam actions the Attorney General loses all control over the decision whether to initiate the suit.

   The Attorney General has no power to remove a relator in an FCA case, no matter how irresponsible the suit becomes. The Attorney General loses all control over the decision whether to initiate the suit. The Attorney General has no control over the breadth of a relator's suit. The relator, unlike independent counsel, need not adhere to the rules and policies of the Department of Justice. A qui tam action, established by the FCA, effects a greater degree of encroachment on Executive prerogatives than does the Ethics in Government Act upheld in *Morrison*. The Ethics in Government Act is aimed at a structural defect within the Executive Branch: investigation of impermissible **executive** activity, and is narrowly tailored to achieve that end. *Riley*, 196 F.3d at 528. The FCA is not. It

13

is aimed at increasing protections against fraud on the public and avoidance of injury to the individual relator.

In summary, the court holds the following:

1) The request to retain the action under seal, which the court has taken as a motion, is DENIED.

2) The qui tam plaintiff has the right to conduct the action and dismiss or settle the case without the consent of the Attorney General.

3) The Government's consent to dismissal of a qui tam action is only required during the initial sixty-day (or extended) period in which the Government may decide whether to intervene.

4) The Government is not entitled to receipt of pleadings, motions, memoranda, etc. in this cause, nor receipt of deposition transcripts since it is not a party to the action.

4) Since the court has magnanimously extended the deadline for the United States to elect to intervene on four separate occasions, dating back to July 21, 1998, and by order of December 3, 1999, (document 13 in the court file) gave notice to the United States that the extension granted was the final one, the United States has waived its right to intervene in this cause.

5) Following receipt of this order the United States is not entitled to receipt of orders entered in this action.

6) A copy of this order and opinion are to be served with the other suit papers.

Parties are given the opportunity to brief within 90 days of appearance of counsel following service of the complaint whether this cause

14

should be dismissed as being violative of provisions of the U.S. Const. art. II. The court warns defendants that it will not tolerate delay in securing representation.

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED this 6th day of July 2000.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.